### Package Freight Express v. New Hampshire Insurance Group

*Harold B. Marcus*, for plaintiff.
*Peter P. Liebert, III,* for original defendant.
*James P. Dornberger,* for additional defendant.

PRATTIS, *J.,* January 15, 1978—

### FINDINGS OF FACT

1. Plaintiff, Package Freight Express, Inc., is a local package delivery service.

2. In 1972, plaintiff had a contract with the International Business Machines Corporation to deliver the latter's typewriters to its customers.

3. Pursuant to its contract with IBM, Package Freight obtained an insurance policy from defendant, New Hampshire Insurance Group covering the value of the typewriters.

4. On January 12, 1972, while plaintiff's driver, Ambrose Palumbo, was making a delivery in Philadelphia, in a rented truck, the truck was stolen and the typewriters removed. Prior to leaving the truck Mr. Palumbo locked the ignition and put the ignition key in an ashtray on the dashboard of

the truck and closed the ashtray. Mr. Palumbo, however, did not lock either the passenger or the driver's door of the truck.

5. At the time the truck was stolen the lock on the driver's door of the truck did not operate. It is still in dispute whether the fact of the malfunctioning of the lock was ever communicated to Hertz Corporation, the owner of the rented truck.

6. The instant action is by Package Freight to recover on its insurance policy from New Hampshire for the value of the typewriters stolen.

7. Defendant, New Hampshire Insurance Company, joined the Hertz Corporation as additional defendant, averring that if the loss had occurred as plaintiff charged, the Hertz Corporation was negligent in supplying a vehicle in which the locks did not work in violation of an alleged warranty to supply a vehicle to plaintiff reasonably suited to transport goods.

8. Defendant, New Hampshire Insurance Group, refused to make payment under the policy invoking a special indorsement. That indorsement provides, inter alia, as follows:

"For and in consideration of an additional premium of $*Included* this policy, subject to its terms and conditions is extended to cover the risk of *Theft of an entire package but excluding all pilferage.* (Emphasis supplied.)

". . .

"It is hereby understood and agreed that this policy does not cover property insured hereunder against the risk of theft from unattended automobiles or vehicles unless contained inside such automobiles or vehicles which are equipped with bodies of entirely closed construction, and unless said theft loss is caused by violent forcible entry, of

which there shall be visible marks at the place of such entry by tools, explosives, electricity or chemicals, or the entire automobile or vehicle be *stolen*."
". . .

"It is agreed by the insured that at all times property is contained in *unattended* automobiles or vehicles, the *doors of such automobiles or vehicles shall be locked, the windows firmly closed and the ignition system securely locked*." (Emphasis supplied.)

9. Additional defendant, Hertz Corporation, refuses to make payment for the value of the typewriters stolen under the truck lease service agreement between Hertz Corporation and Package Freight, invoking paragraph 26. That paragraph provides, inter alia, as follows:

"26. Non Liability for Contents. Hertz shall not be liable for loss of or damage to any property left, stored, loaded or transported in or upon any vehicle furnished by Hertz to Customer pursuant to this Agreement, whether or not due to the negligence of Hertz, its agents or employees, and Customer hereby agrees to hold Hertz, its agents and employees, harmless from and to defendant and indemnify them from and against all claims based upon or arising out of such loss or damage. No right of Hertz under this Article 26 may be waived except by an Agreement in writing signed by an executive officer of Hertz as hereinbefore provided in Article 25."

## DISCUSSION

New Hampshire contends that the above special endorsement constitutes a warranty by the insured, the breach of which excuses payment by the insurer if theft occurs under such circumstances.

Plaintiff contends that if the endorsement constitutes a warranty, breach of the warranty does not operate to excuse payment by the insurer because the breach was not material to the risk sought to be prevented by the securing of the vehicle.

Generally, theft policies contain some provisions requiring the insured to lock his automobile when unattended, or to maintain and use adequate locking devices. 8 Couch on Insurance 2d §37:975. Long standing principles suggest that a theft policy contract requiring the locking of a car when unattended, creates a warranty by the insured to lock the car: Pisciotte v. Indemnity Co. of America, 164 La. 200, 113 So. 840 (1927). Courts have held the compliance with such a provision does not mean that the car must be locked at all times, but the policy provision requires the insured to use due diligence in locking the automobile when unattended: McCormick v. Potomac Insurance Co., 255 N.Y. 302, 174 N.E. 689 (1931).

Moreover, a warranty in a theft policy to use all due diligence in locking the automobile when leaving it, is material and a breach avoids the policy: Davis v. Yorkshire Ins. Co., 288 S.W. 80 (Mo. 1926); McCormick v. Potomac Insurance Co., supra, and Universal Coffee Company v. American Insurance, 5 Ill. App. 2d 319, 125 N.E. 2d 643 (1955).

However, plaintiff contends that such a policy provision does not cover a situation where the entire truck is stolen and the contents removed because the policy states that it extends to cover the risk of *theft* of an entire package but *excluding all pilferage from* an unattended automobile or vehicle.

At issue then is the interpretation of this exclusion clause. Reviewing the cases on point, there

appear to be two distinct lines of authority, with the most recent case holding that such an exclusion clause covers the situation where the vehicle containing the insured merchandise is stolen.

In Sally Chain Store v. Ace Bonded Carriers, 307 Ill. App. 644, 30 N.E. 2d 966 (1940), the theft provision was as follows:

"(6) That the said policy of insurance between [the defendant and carrier] contains the following provisions: 'It is further understood and agreed that this policy does not cover theft *from* automobiles or trucks when left unattended, unless such automobile or truck is equipped with a fully enclosed body, all windows and doors of which shall have been securely locked at time of such loss . . . ' " (Emphasis supplied.)

In that case the driver left the delivery vehicle unattended with the motor running and one door unlocked. The vehicle was stolen. The delivery vehicle was not a truck but a sedan with glass windows. In addition, when the vehicle was found there were no signs of forcible entry. The court held all these factors were immaterial because theft of entire vehicle was not within the provision. Moreover, the court found that policies of insurance were to be liberally construed in favor of the insured and any ambiguity in the policy which in any way tends to limit or defeat liability should be construed most favorably to the insured. Accordingly, the court found that the exclusionary provision was intended to apply to situations where the thief took a package from the truck while unattended, and not where the thief stole the entire truck.

In Universal Coffee Company v. American Insurance, supra, a 1955 case, the Appellate Court of

Illinois distinguishes Sally Chain Stores and held that the loss was not within the coverage of the insurance policy. The insurance provision provided the following: "Theft of an entire package . . . directly resulting from violent forcible entry into *vehicles* with bodies of entirely closed construction provided doors and other openings of such vehicles were closed and locked when the forcible entry and theft occurred." The driver of the truck turned off the ignition but did not lock the door to the cab, and the entire truck was stolen. When the truck was found, it was discovered that the rear panel door had been broken open in order to remove the contents. The court distinguished Sally Chain Stores because it referred to the "body" while the instant case referred to the "vehicle," a much broader term. The court held that the policy provision was unambiguous and required no interpretation, and when the thief entered the unlocked cab to drive the truck away and then broke the rear panel door to remove the contents, the loss was not within the coverage.

The Supreme Court of Rhode Island in Gorman & Son v. American Surety Co., 99 R.I. 177, 206 A.2d 460 (1965), also distinguished its case from Sally Chain Stores v. Ace Bonded Carriers, supra. The court held that where the policy provided no coverage for property left unattended in any automobile, jewelry removed from the truck after the automobile was stolen, was within the exclusionary clause of the policy and insurer is not liable for loss.

In a 1971 case the Supreme Court of Ohio, in Security Finance Co. v. Aetna Insurance Co., 26 Ohio St. 2d 135, 269 N.E. 592 (1971), followed Sally Chain Stores and held that a theft of collector's coins occurring at a time the vehicle with its

contents was stolen from parking lot, was covered notwithstanding a provision of theft policies excluding coverage for loss of coins in *theft from vehicle*.

The most recent case on this point is Hellert v. Travelers Insurance Co., 382 N.Y.S. 2d 203 (1976), wherein the New York Supreme Court did not follow Sally Chain Stores. The exclusion clause of the personal article policy stated that coins were not insured against theft from an unattended automobile. The court held that such a clause was clearly designed to protect defendant from liability where loss arises as a result of plaintiff's action in leaving the coins in the auto. Similarly, the clause was found to cover the situation where loss of coins resulting from theft of an unattended auto containing the coins, despite the contention that the coins were not stolen "from" the auto.

Additional defendant, Hertz Corporation, contends that it never received notice that the door lock did not operate and was therefore not negligent in the maintenance of their truck. Hertz further contends that New Hampshire Insurance Group's rights, if any exist, rise no higher than plaintiff's rights and are barred by the release agreement contained in the lease.

## CONCLUSIONS OF LAW

The plain meaning of the language in the present contract of insurance envisions an absence of coverage of the risk of loss when certain precautions are not taken by the insured as warranted by the insured in the contract of insurance.

The Hertz Corporation had no notice of the malfunctioning of the lock on the truck door, and in any event, it cannot be held liable for loss of contents

under the hold harmless clause of the rental agreement.

Accordingly, this court finds in favor of defendants, New Hampshire Insurance Group and Hertz Corporation, t/a Truck Rental.